UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>                Plaintiff,<br><br>v.<br><br>CLINICIANS BIXBY, BARNES, IDALEE LE, HARTT, BOGGS, BAUMGARTNER; DOCTORS BERRETT, ELIASON, AND BERRY; WARDEN CHRISTENSEN; DEPUTY WARDEN MCKAY, DR. PATCHETT, and CLINICIAN HOYLE,<br><br>                Defendants. | Case No. 1:21-cv-00008-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this civil rights action is the Corizon Medical Defendants' Motion for Summary Judgment, with Joinder by the Idaho Department of Correction Defendants, seeking dismissal of this case for Plaintiff Maximiliano Sileoni's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act (PLRA).[1] (Dkts. 27, 28.) Plaintiff has been provided with the "Notice to Pro Se Litigants of the Summary Judgment Rule Requirements." (Dkt. 29.) Plaintiff has filed several motions, including a Motion for Summary Judgment that responds to Defendants' Motion. (Dkt. 31.)

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 1**

## PRELIMINARY MOTIONS

In his Amended Complaint (Dkt. 12), Plaintiff asserts Eighth Amendment claims of lack of mental health treatment against Clinicians Bixby, Barnes, Le, Hartt, Boggs, Baumgartner and Hoyle; Physician's Assistant Barrett; Drs. Eliason, Barry, and Patchett; Warden Christensen; and Deputy Warden McKay. Dkts. 11, 12. However, a threshold matter to be resolved is whether Plaintiff exhausted his administrative remedies. Because this issue must be resolved before the parties are permitted to engage in discovery related to the merits, the Court concludes that Plaintiff's Motion for Subpoena (Dkt. 30) "to show this Court that I have multiple claims against all defendant actions, and abuse on me, as well as harassment" is premature. (*See* Dkt. 30, pp. 2-3). Plaintiff asserts that he "need[s] this evidence to add to [his] summary judgment." (*Id.*, p. 3.) However, Defendants have provided Plaintiff with disclosures regarding documents related to the narrow issue of exhaustion. (*See* Exhibits to Dkt. 27.) That is all that is required at this point. (*See* Dkt. 13, Standard Disclosure and Discovery Order.)

Plaintiff has also filed a motion seeking an extension of time to gather "more evidence from IDOC investigation to support [his] claim where [he is] being abuse[d] and not treated by IDOC staff." (Dkt. 32, p. 1.) He states that he needs this information to respond to Defendants' summary judgment motion. Information regarding the merits of his claims is not relevant to that motion. Plaintiff has sufficiently responded to Defendants' motion by filing his own motion. Therefore, no extension and no further response is necessary.

MEMORANDUM DECISION AND ORDER - 2

## STANDARDS OF LAW

Prisoners are required to exhaust all available prison administrative remedies before they can bring their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Courts may not engraft an unwritten 'special circumstances' exception" to excuse a prisoner's failure to follow prison policies governing administrative remedies "onto the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 1174, --, 136 S. Ct. 1850, 1862 (2016). Rather, the Supreme Court observed, "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id*.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The exhaustion requirement supports the important policy concern that

MEMORANDUM DECISION AND ORDER - 3

prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

## BACKGROUND AND DISCUSSION

Plaintiff has alleged that various clinicians and doctors in the Idaho Department of Correction (IDOC) health care system have failed to provide adequate mental health treatment for his conditions. He asserts that he asked female mental health clinicians to

**MEMORANDUM DECISION AND ORDER - 4**

reassign him to a male clinician because of his struggles with exhibitionism. The clinicians refused to reassign him. Both male and female clinicians failed to change his medications or give him appropriate mental health treatment, compounding his mental health condition. He alleges that the medical doctors ignored his symptoms, failed to give him medication, did not treat his medical and mental health conditions appropriately, and required him to meet with the female clinicians. More recently, in his motions, he has alleged that staff has verbally abused and harassed him. While Plaintiff asserts that these actions occurred between 2010 and 2021, the Court informed Plaintiff that he could proceed on only those occurrences within the two-year stature of limitations period. (See Dkts. 12, 14, p. 6.)

It is uncontested that the IDOC has adopted and published a three-step grievance process. (Dkt. 27-3, Tara Young Aff., ¶¶ 2-3.) All IDOC inmates are instructed and trained on the use of the three-step grievance process during a grievance orientation. (*Id.*, ¶ 3.) The written grievance procedures are available to offenders to review at every IDOC facility. (*Id.*)

The grievance process is as follows. First, the offender must seek an informal resolution of the matter or incident by completing an offender concern form to be sent to the staff member most capable of responding to and resolving the issue. (*Id.*, ¶ 5.) If the staff member does not respond within the 7-day response period, the offender may write, "no response," on the form and proceed to the next step. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 5**

Second, if informal resolution cannot be accomplished, the offender must complete a grievance form containing specific information, including the nature of the complaint, date, place, and names of the specific issue being grieved. (*Id*., ¶ 6.) The offender concern form must be attached. The grievance form must be filed within thirty (30) days of the incident or problem that is the basis for the grievance. (*Id*.) A level two and a level three response are provided to the offender on the grievance form. (*Id*., ¶ 7.)

Third, if the offender is not satisfied with the responses to his grievance, he may file an appeal, but must do so within fourteen (14) days of receiving the response. (*Id*., ¶ 8.) Typically, the appellate authority is the warden of the facility or the IDOC health services director. (*Id*.) The offender grievance process is exhausted only upon completion of all three steps, i.e., (1) offender concern form, (2) grievance form, and (3) grievance appeal. (*Id*., ¶ 9.)

Defendants assert that, of the 70 grievances Plaintiff submitted since January 2019, only seven relate to mental health issues, only one was appealed to the third level, and none specifically addressed the claims in his lawsuit. (Dkt. 27-1, p. 8.) Defendants emphasize that the fact that Plaintiff did appeal one to the third level shows that he "has access to the grievance process and knows how it works." (*Id*.)

Those seven mental-health-related grievances are as follows:

| | |
|---|---|
| Grievance IC 200000191, 2/10/2020 | Plaintiff complained: "My mental illness has caused significant disruption in my everyday life as well it prevented proper functioning of the facility do to my exhibitions symptoms"[1] and he asked to be moved to a different facility |

---

[1] All of Plaintiff's quotations cited in this Order are verbatim.

**MEMORANDUM DECISION AND ORDER - 6**

|  |  |
|---|---|
|  | (Dkt. 27-6, p. 2.) He explains: I "want to get move to a facility that can give me treatment for exhibition disorder do to not being treated at ISCC. The Level 2 response was that the psychiatrist had given him treatment recommendations that he agreed with, but that Plaintiff had not been completely compliant with the homework given to treat his exhibition disorder. Plaintiff did not file an appeal to Level 3. (*Id.*, pp. 2-3.) |
| Grievance IC 200000252, 2/21/2020 | Plaintiff requested to "check out of" Protective Custody and be moved to ISCI Unit 16 to "get mental health treatment." (Dkt. 27-7, p. 2.) Plaintiff did not file an appeal to Level 3. (*Id.*, p. 3.) |
| Grievance II 200000919, 10/2/2020 | This is a rejection of a duplicate Grievance: "Requesting to be housed in Unit 16, but has been denied. Your Grievance has been Returned Without Action" for failure to include a completed Inmate Concern Form showing he tried to resolve the issue with applicable staff; Officer Kormylo directed him to file a concern with the clinical staff, not prison staff. (Dkt. 27-8, pp. 4-5.) |
| Grievance II 200000934, 10/06/2020 | Plaintiff again requested "to be moved to Unit 16 due to mental health condition." (Dkt. 27-8, p. 2.) The Grievance was "Returned Without Action (RWA)" because Plaintiff had not allowed staff to respond to his underlying complaint within the 7-day allotted time, and because it was duplicative of a grievance submitted on 10/02/2020 requesting to be moved to Unit 16. (*Id.*, p. 3.) |
| Grievance II 200000962, 10/13/2020 | Plaintiff again requested to be moved to Unit 16 "because of concern about mental health condition." (Dkt. 27-9, p. 2.) The Grievance was "Returned Without Action (RWA)" because Plaintiff already had three open/active |

MEMORANDUM DECISION AND ORDER - 7

| | |
|---|---|
| | grievances in the system, which is the maximum number allowed under the IDOC grievance policy. (*Id*.) |
| Grievance IM 200000607, 12/14/2020 | Plaintiff complained that he would like to be allowed to have his current medications KOP (keep on person) instead of having to go to pill call, because whenever a female nurse was in charge of pill call, the nurse harassed him, and the accompanying male correctional officer would come to his door and ask him "not to act up in front of female nurse." (Dkt. 27-10, p. 5.) Plaintiff said he was sick of being treated as a "rapist, exhibitionist." (*Id*.) The Grievance was "Returned Without Action (RWA)" because Plaintiff did not attach an inmate concern form to the grievance as required by the grievance policy. (*Id*., pp. 2, 4.) |
| Grievance IM 210000004, 1/4/2021 | Plaintiff complained that "this clinician Coild verbaly harassted me and humiliated me on 12-27-20. At suicide watch cell 2, in IMSI this lady starded to scream at me to stop trying to get a female nurse to care for the cut on my penis. Apperently her and some one else are puting and two together and stating that that's the reason why I cut my penis, and not because I'm being humiliated as a sex-offender." (Dkt. 27-12, p. 2, 4.) |
| | This was directed to Clinician Amy Hoyle, who responded, in part, as follows: "On 12/27/2020 I assessed Mr. Sileoni cell side in medical. On 12/24/2020 Mr. Sileoni pulled a small piece of metal off the inside of a utility port and used it to mutilate his genitals. I confronted his self-injurious behavior as criminal behavior as evidenced by the following: Since being held in IDOC custody, Mr. Sileoni has received 12 DORs for indecent exposure….; [and] 11 DORs for sexual abuse or harassment of staff." (Dkt. |

MEMORANDUM DECISION AND ORDER - 8

|  |  |
|---|---|
|  | 27-12, p. 2.) Plaintiff did not appeal to the third level authority. (*Id.*, p. 3.) |
| Grievance IM 210000104, 3/4/2021 | Plaintiff submitted this Grievance *after* he filed this lawsuit and *after* he submitted the amended complaint. He complained of the following: "I ask to be house at IMSI B-1-1A, IMSI C-1-1-a IMDI G-block to work ISCI unit 16 to get mental treatment I have spend the last 10 years in add-seg or in P.C. unit do to sex-crime and going bulying me out of unit. I would like to work, or get house somewhere were I have a few hours a day out where I will not get harassted." (Dkt. 27-11, p. 5.) He further states that he previously told a J-block "case worker" that he could not live in Jblock due to "the gang harassing me." (*Id.*) Plaintiff's requested remedies were: "I would like to be hosued G-block IMSI to work, as well to inform of all the drug's coming in throughout G-block staff and inmate, or get move to B-1, C-1, ISCI unit 16 to get mental treatment, as well time out of cell due to my crime I only can live in all these name unit." (*Id.*) |
|  | The response was that Plaintiff was not eligible for a lower custody housing placement, and that, if he desired that placement in the future, he must "stay out of trouble and stop getting DOR's." (*Id.*, p. 6.) This is the only mental health-related Grievance that Plaintiff appealed to a Level 3 Responder. |

The record is clear and uncontested that Plaintiff did not proceed through all three levels of the grievance process for any complaint that is similar to those asserted in the pleadings in this action. Plaintiff explains his failure to use the complete grievance process in several ways. First, he states that "this grievance is only one of the multiple complaint that I made about my mental problem." (Dkt. 31, p. 4.) Unfortunately, his

**MEMORANDUM DECISION AND ORDER - 9**

complaints were not made in the manner set forth in prison policy. As a person in custody of the prison, Plaintiff must follow the rules of the prison. Plaintiff states that he wrote a concern form to Warden Christensen about his exhibitionist behavior, requesting that only male clinicians to treat him. According to the policy, Warden Christensen is not the first level staff member most capable of responding to and resolving the issue; he is the third level appellate responder.

It is also unhelpful for Plaintiff to assert: "I exhausted my administrative remedies year ago when all 3 facility's that I been house in IMSI, ISCC, ISCI, refuse to treat me, for my mental problem. No matter of all the D-O-R concern form asking for help or treat me, and meeting with DW, or investigation about my sexual behavior with female staff." (Dkt. 33 at 4.) Plaintiff also states that he addressed his issues with the mental health department doctors, who did not entertain his request to be moved to a different facility. (*Id*., pp. 4-5.) These vague statements do not show that Plaintiff completed the *three-step* grievance process for these *particular claims* from the *particular time period* set forth in his pleadings.

In the face of Defendants' proffer of an extensive set of grievance records, Plaintiff does not come forward with sufficient rebuttal evidence showing that he exhausted his claims through the full grievance process. He has attached many concern forms and medical records to his Motion for Summary Judgment, but none shows *complete*, *proper* exhaustion of the claims in this lawsuit. (*See* Dkt. 31-1.) An inmate properly exhausts all available remedies only by using "all steps that the [prison] holds

**MEMORANDUM DECISION AND ORDER - 10**

out, and doing so properly so that the [prison] addresses the issues on the merits." *Woodford*, 548 U.S. at 90, 92 (citation omitted).

Plaintiff also explains that he did not appeal because he thought it was futile. For example, he states, as to Grievance IC 200000252, that he "decided to not appeal to Level 3 because their was no point to hear the same response form the Warden as the other 2 respondence to level 1 and 2." (Dkt. 33, p. 7.) Proper exhaustion is required "even where it may appear futile." *Nunez*, 591 F.3d at 1231 (citation omitted). Plaintiff's decision to abandon his grievances without going to the third appellate level closed the door to this lawsuit. The appellate prison authority must be given an opportunity to resolve disputes before the disputes turn into litigation. *Jones*, 549 U.S. at 204.

Plaintiff also alleges that all of the female defendants in this case acted in a manner to "abuse their authority to sexualy diminish and abuse me do that they knew that I had develop a mental condition where I felt the impulse to show my penis to only female, because I kept on hearing voices coming from nowere at time telling me to do so at sertaing staff because those female staff apperently wanted that caind of behavier from me." (Dkt. 31, p 3.)

The Court takes judicial notice of Plaintiff's pleadings in Case No. 1:20-cv-00508-BLW, *Sileoni v. IDOC Staff*, where Plaintiff alleged that over 32 female prison staff and medical personnel had sexual contact with him or invited him to have sexual contact with them. There, the Court concluded that the complaint in that case was "wholly fanciful and delusional," as well as "implausible, irrational, and incredible." (Dkt. 15, p. 20 in that

**MEMORANDUM DECISION AND ORDER - 11**

case.) The complaint was dismissed as frivolous. (*Id*.) The Court's reasoning in that case informs its decision here. Plaintiff's assertions here are not made in isolation, but are part of a pattern of implausible and fanciful allegations.

Moreover, in this context, Plaintiff's assertions that medical and mental health professionals sexually abused and harassed him, or that they invited him to expose himself to them, do not support any equitable argument that would excuse Plaintiff's failure to fully exhaust his claims through the prison grievance system. Plaintiff is certainly not afraid to file concern forms, as the record shows, nor is he afraid to raise a claim that clinicians were harassing him, as in Grievance IM 210000004. If, in fact, Plaintiff was not receiving proper mental health treatment by female staff, but was being sexually abused by them and desired no further interaction with them, it was important for high-level prison and medical/mental health administrators to know that at the time the abuse was happening. Because it is so important that officials be given notice of problems within the prison so that the problems can be remedied without having to answer to litigation, Congress made this a mandatory requirement. Plaintiff has not satisfied that requirement for the claims in this lawsuit.

3. **Plaintiff's Late-Filed Grievance and Motion for Summary Judgment**

Finally, the Court addresses Plaintiff's late-filed, fully-exhausted grievance, where he asserts that he is entitled to be moved to the ISCI Behavioral Health Unit 16 facility for mental health treatment. This claim is asserted in the Amended Complaint against Defendants Deputy Warden McKay and Warden Christensen, but not against the other Defendants. See Dkt. 12. *Cano* requires that these claims be dismissed without prejudice

**MEMORANDUM DECISION AND ORDER - 12**

because Plaintiff's administrative exhaustion occurred *after* the date of the filing of the pleadings. 739 F.3d at 1220-21. "Requiring dismissal without prejudice when there is no pre-suit exhaustion provides a strong incentive that will further ... Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them." *McKinney v. Carey,* 311 F.3d 1198, 1200-201 (9th Cir. 2002). "While it is true that requiring dismissal may, in some circumstances, occasion the expenditure of additional resources on the part of the parties and the court, it seems apparent that Congress had made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to filing suit." *Id.* at 1200.

## CONCLUSION

The record is clear that Plaintiff knows how to properly use the grievance system and how to fully exhaust the administrative remedies available to him. To his credit, he has frankly admitted that he chose not to do so here on the majority of his claims for the various reasons set forth in his Motion for Summary Judgment. His claims regarding officials' failure to move him to the Behavioral Health Unit for mental health treatment are administratively exhausted, but cannot be heard in this lawsuit because exhaustion came after the lawsuit was filed. Unfortunately for Plaintiff, all of his claims must be dismissed. Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will be denied. This case will be dismissed in its entirety without prejudice.

ORDER

**IT IS ORDERED**:

1. Defendants' Motion for Summary Judgment (with Joinder) (Dkts. 27, 28) is GRANTED.

2. Plaintiff's Motion for Subpoena (Dkt. 30) is DENIED as MOOT.

3. Plaintiff's Motion for Summary Judgment (Dkt. 31) is DENIED.

4. Plaintiff's Motion for More Time to Respond to Defendants' Summary Judgment (Dkt. 32) is DENIED, to the extent that Plaintiff's Motion for Summary Judgment has been construed as a response to Defendants' Motion for Summary Judgment, and no additional briefing or exhibits are necessary to decide either summary judgment motion.

DATED: September 28, 2021

_____
B. Lynn Winmill
U.S. District Court Judge